UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARLEY-DAVIDSON CREDIT CORP., | No. 2:14-cv-1703-MCE-EFB |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| CHANCELLOR SERVICES, LLC, et al., | |
| Defendants. | |

This matter came before the court on February 4, 2015, for hearing on plaintiff's motion for default judgment against defendant Chancellor Services, LLC ("Chancellor").[1] ECF No. 10. Attorney Geronimo Perez appeared on behalf of plaintiff; no appearance was made by Chancellor. For the reasons stated below, plaintiff's motion must be granted.

I.   Background

Plaintiff brought suit against defendants Chancellor, Walter Fletscher, and Phillip Price on July 18, 2014, alleging a breach of contract claim against Chancellor and breach of guaranty claims against Fletcher and Price. ECF No. 1. The docket reflects that on August 29, 2014, plaintiff personally served Robin Fletscher, Chancellor's registered agent for service, with a copy of the summons and complaint. ECF No. 5. Plaintiff requested entry of Chancellor's default

---

[1] This case was referred to the undersigned pursuant to Eastern District of California Local Rule 302(c)(19) and 28 U.S.C. § 636(b)(1).

1 (ECF No. 7), which the Clerk entered on October 1, 2014.  ECF No. 8.  Plaintiff subsequently

2 filed the instant motion for default judgment against defendant Chancellor.  ECF No. 10.[2]

3       According to the complaint, plaintiff is a Nevada corporation with its principal place of

4 business in Carson City, Nevada.  *Id.* ¶ 1.  Defendant Chancellor is a limited liability company

5 organized and existing under the laws of Oregon, with its principal place of business in Oregon.

6 *Id.* ¶ 2.  Walter Fletscher and Phillip Price reside in California and are members of Chancellor.

7 *Id.* ¶¶ 3-4.

8       On February 14, 2007, Chancellor executed an Aircraft Security Promissory Note (the

9 "note") in favor of Eaglemark Savings Bank ("Eaglemark") in the principal sum of $1,775,000.00

10 plus interest.  *Id.* ¶ 8, Ex. A.  Under the note, Chancellor promised to make 240 monthly

11 payments of $13,814.88 by the 18th of each month, with interest accruing at 7.05% per annum.

12 *Id.*  To secure repayment under the Note, Chancellor executed a security agreement that granted

13 to Eaglemark a security interest in a Cessna Citation, 428 Aircraft, serial number N550PF

14 ("aircraft").  *Id.* ¶ 9.  To induce Eaglemark to extend credit to Chancellor, defendants Price and

15 Fletscher executed and delivered to Eaglemark Unconditional and Continuing Guarantees.

16 Specifically, Price and Fletscher agreed to be held liable for any and all expenses paid or incurred

17 in connection with the collection of all sums and obligations guaranteed, including all reasonable

18 attorneys' fees and costs.  *Id.* ¶¶ 10-11.  Pursuant to the loan documents, Eaglemark automatically

19 assigned the note, security agreement, the Unconditional and Continuing Guarantees of Price and

20 Fletscher, and all related loan documents, to plaintiff.  *Id.* ¶ 17.

21       After execution of the note and security agreement, Chancellor defaulted by failing to pay

22 the amount due under the note.  *Id.* ¶ 13.  In an effort to satisfy the total amount due, Chancellor

23 sold the aircraft with plaintiff's permission.  *Id.* ¶ 14; *see* ECF No. 16 n.1.  The aircraft proceeds

24 were insufficient to cover the total sum due, and a deficiency balance remained in the amount of

25 /////

26

27     [2] Plaintiff's motion only seeks default judgment against Chancellor.  At the February 4 hearing, plaintiff moved for dismissal of the individual defendants.  The court recommends that

28 request be granted and defendant Fletscher and Price be dismissed without prejudice.

$1,130,826.40. *Id*. ¶ 15. Despite plaintiff's demand for payment, defendants have failed to pay the balance due under the Note. *Id*. ¶ 17.

II. <u>Legal Standard</u>

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. *See* Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986)). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court considers the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). "In applying this discretionary standard, default judgments are more often granted than denied." *Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003) (quoting *PepsiCo, Inc. v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999)).

As a general rule, once default is entered, the factual allegations of the complaint are taken as true, except for those allegations relating to damages. *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citations omitted). However, although well-pleaded allegations in the complaint are admitted by defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). A party's default conclusively establishes that party's liability, although it does not establish the amount of damages. *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) (stating that although a default established liability, it did not establish the extent of the damages).

III. Discussion

    A. Appropriateness of the Entry of Default Judgment Under the *Eitel* Factors

        1. Factor One: Possibility of Prejudice to Plaintiff

The first *Eitel* factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of granting a default judgment. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Here, plaintiff would potentially face prejudice if the court does not enter a default judgment. Absent entry of a default judgment, plaintiff would be without any recourse for recovery. Accordingly, the first *Eitel* factor favors the entry of a default judgment.

        2. Two and Three: The Merits of Plaintiff's Substantive Claims and Sufficiency of the Complaint

The merits of plaintiff's substantive claims and the sufficiency of the complaint should be discussed together because of the relatedness of the two inquires. The court must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought. *See Danning*, 572 F.2d at 1388; *PepsiCo, Inc.*, 238 F. Supp. 2d at 1175.

Here, the complaint asserts a single breach of contract claim against Chancellor. The question arises as to whether Nevada or California law applies to the claim. Plaintiff argues that Nevada law governs this action pursuant to the choice-of-law clause contained in the parties' agreement. ECF No. 10-1 at 4-5. Plaintiff further contends that the complaint sufficiently alleges a breach of contract claim under Nevada law. *Id*. at 5.

A federal court sitting in diversity applies the rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 796 (1941). Thus, this court looks to California's choice-of-law rules. In California, "a freely and voluntarily agreed-upon choice of law provision in a contract is enforceable 'if the chosen state has a substantial relationship to the parties or the transaction or any other reasonable basis exists for the parties' choice of law.'" *1–800–Got Junk? LLC v. Super. Ct.*, 189 Cal.App.4th 500, 513-14 (2010) (quoting *Trust One Mortg. Corp. v. Invest Am. Mortg. Corp.*, 134 Cal.App.4th 1302, 1308 (2005)). There is "a strong policy in favor enforcing such provisions." *Id*. at 513.

"[I]f the proponent of the clause demonstrates that the chosen state has a substantial relationship to the parties or their transaction, or that a reasonable basis otherwise exists for the choice of law, the parties' choice generally will be enforced *unless the other side can establish* both that the chosen law is contrary to a fundamental policy of California and that California has a materially greater interest in the determination of the particular issue." *Id*. at 514 (emphasis in original).

Plaintiff is a Nevada corporation with its principal place of business in Carson City, Nevada. Declaration of Amy Kappen ISO Pl.'s Mot. Default J. (ECF No. 10-3) ¶ 3. Thus, Nevada has a substantial relationship to a party to this action. *See Application Group, Inc. v. Hunter Group, Inc.*, 61 Cal.App.4th 881, 899 (1998) ("[T]he mere fact that one of the parties resides in the chosen state provides a 'reasonable basis' for the parties' choice of law."); Restatement (Second) of Conflict of Laws § 187 cmt f (recognizing that a substantial relationship exists "where one of the parties is domiciled or has his principal place of business."). As Chancellor has not appeared in this action and therefore has not demonstrated that Nevada law is contrary to a fundamental policy of California and that California has a materially greater interest in the issue before the court, it is appropriate to apply Nevada law to plaintiff's breach of contract claim, as contemplated by the parties' contract.

To succeed on a breach of contract claim under Nevada law, a plaintiff must "show (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 899 (9th Cir. 2013).

Here, the complaint sufficiently alleges a claim for breach of contract under Nevada law. Plaintiff alleges that on February 14, 2007, Chancellor executed an Aircraft Secured Promissory Note in favor of Eaglemark in the principle sum of $1,775,000. ECF No. 1 ¶ 8. Under the note, Chancellor was required to make 240 equal monthly payments of $13,814.88 by the 18th of each month with interest accruing at 7.05%. *Id*. To secure payment under the note, Chancellor granted to Eaglemark a security interest in an airplane pursuant to an Aircraft Security Agreement. *Id*. ¶ 9. Under the terms of the loan documents, the Note and security agreement, and all related loan documents, were automatically assigned to plaintiff. *Id*. ¶ 16. After the

5

1  execution of the note and security agreement, Chancellor defaulted under the note by failing to
2  pay the amount due. *Id*. ¶ 13. Although Chancellor sold the aircraft securing the debt in an effort
3  to satisfy the debt owed, a deficiency balance remained in the amount of $1,130,826.40. *Id*.
4  ¶¶ 14-15.
5        These allegations are sufficient to support plaintiff's claim for breach of contract under
6  Nevada law. Accordingly, the second and third Eitel factors weigh in favor of default judgment.
7                3. Factor Four: The Sum of Money at Stake in the Action
8        Under the fourth factor cited in *Eitel*, "the court must consider the amount of money at
9  stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at
10 1177; *see also Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal.
11 2003). Plaintiff seeks damages in the amount of $1,130,826.40, plus interest. Although the
12 amount of money at stake in this case is large, the amount sought is not excessive in relation to
13 Chancellor's conduct and the value of the aircraft that was financed. Indeed, plaintiff only seeks
14 to recover what it is owed under the contract.
15               4. Factor Five: The Possibility of Dispute Concerning Material Facts
16       The court may assume the truth of well-pleaded facts in the complaint (except as to
17 damages) following the clerk's entry of default. *See, e.g., Elektra Entm't Group Inc. v. Crawford*,
18 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are
19 taken as true after the court clerk enters default judgment, there is no likelihood that any genuine
20 issue of material fact exists."); *accord Philip Morris USA, Inc.*, 219 F.R.D. at 500; *PepsiCo, Inc.*,
21 238 F. Supp. 2d at 1177. Accepting the plaintiff's allegations as true, there will likely be no
22 dispute concerning a material fact.
23               5. Factor Six: Whether the Default Was Due to Excusable Neglect
24       The record reflects that Chancellor's default was not due to excusable neglect. Chancellor
25 was served a copy of the complaint and summon on August 29, 2014. ECF No. 5. Plaintiff also
26 served Chancellor a copy of the motion for default judgment. ECF Nos. 10-9, 13. Thus, it
27 appears that Chancellor had notice of the pending action but has decided not to defend against
28 plaintiff's claim.

6. <u>Factor Seven: The Strong Policy Favoring Decisions on the Merits</u>

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177; *see also Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010); *ACS Recovery Servs., Inc. v. Kaplan*, 2010 WL 144816, at *7 (N.D. Cal. Jan. 11, 2010); *Hartung v. J.D. Byrider, Inc.*, 2009 WL 1876690, at *5 (E.D. Cal. June 26, 2009). Accordingly, this factor should not preclude entry of default judgment.

On balance, the *Eitel* factors weigh in favor of granting plaintiff's motion for default judgment. The court must therefore determine the amount of damages plaintiff is entitled to receive.

B. <u>Damages</u>

Plaintiff submitted the declaration of Amy Kaffen, an Operations Manager for Harley-Davidson Credit Corporation. ECF No. 10-3. She included as an exhibit the Note, showing that Chancellor promised to repay the sum of $1,775,000, plus interest accruing at 7.05%. ECF No. 10-4 at Ex. A. The note was immediately assigned to plaintiff upon funding. *Id*. ¶ 10. To secure repayment of the obligations under the Note, Chancellor granted Eaglemark a security interest in an aircraft. ECF No. 10-5. Ms. Kaffen declares that Chancellor failed to pay the amount due under the note. ECF No. 10-3 ¶ 14. Chancellor, with plaintiff's approval, sold the aircraft in a short sale on September 27, 2011. Suppl. Kaffen Decl., ECF No. 16 ¶ 3. The total net proceeds to plaintiff after broker fees and an escrow service fee was $499,230.00. *Id*. ¶¶5-9, Ex. A. After crediting this amount to the outstanding debt of $1,630,056.40, Chancellor owes plaintiff $1,130,826.40, plus interest. ECF No. 10-3 ¶ 16; *see* ECF No. 10-1 at 8. Plaintiff is therefore entitled to damages in this amount on the breach of contract claim against Chancellor.

C. <u>Costs and Attorney's Fees</u>

Plaintiff also requests attorneys' fees and costs in the amount of $17,930.00. Local Rule provide that motions for awards of attorney's fees and costs shall be filed not later than 28 days after the entry of final judgment. *See* E.D. Cal. L. R. 292, 293. Rule 293 further requires a party

7

seeking an award of attorney's fees to submit an affidavit addressing certain criteria that the court will consider in determining whether an award of attorney's fees is appropriate. *See* E.D. Cal. L. R. 293(b) and (c). The local rules also provide that "[w]ithin fourteen (14) days after entry of judgment or under which costs may be claimed, the prevailing party may serve on all other parties and file a bill of costs conforming to 28 U.S.C. § 1924." E.D. Cal. L. R. 292. Under 28 U.S.C. § 1924, a party claiming any item of cost must submit a bill of costs and attach thereto an affidavit demonstrating that the "item is correct and has been necessarily incurred in the case . . . ."

Although plaintiff has submitted two declarations in support of its request for attorney's fees, the declarations do not address all of the criteria listed in Local Rule 293.[3] Plaintiff has also failed to submit a bill of cost conforming to 28 U.S.C. § 1924. *See* E.D. Cal. L.R. 292. For each of these reasons, plaintiff's requests for attorney's fees and costs shall be addressed by an appropriate motion filed in conformance with Local Rule 292 and 293.

IV.   Conclusion

For the reasons state above, it is hereby RECOMMENDED that:

1. Plaintiff's application for default judgment (ECF No. 10) be granted;

2. Plaintiff's claims against Walter Fletscher and Phillip Price be dismissed without prejudice;

3. The court enter judgment against defendant Chancellor in the amount of $1,130,826.40, plus interest at the rate of 7.05% per annum; and

4. Plaintiff's request for costs and attorney's fees be denied without prejudice to a timely motion brought under Local Rule 292 and 293.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days

---

[3] Plaintiff does not address the novelty and difficulty of the legal questions presented, or the skill required to perform the legal services properly. *See* E.D. Cal. L.R. 293. Furthermore, while plaintiff identifies the total number of hours worked by 7 attorneys and 3 paralegals, plaintiff does not identify the specific tasks performed by each individual. Accordingly, it is difficult to determine the reasonableness of the request for attorneys' fees.

after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan,* 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  September 10, 2015.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE